UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Crim. No. 15-303 (MJD/JJK)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | PLEA AGREEMENT AND |
| | ) | SENTENCING STIPULATIONS |
| GERARD LEONARD ROY, | ) | |
| | ) | |
| Defendant. | ) | |

The United States of America and Gerard Leonard Roy (hereinafter referred to as the "defendant") agree to resolve this case on the terms and conditions that follow.   This plea agreement binds only the defendant and the United States Attorney's Office for the District of Minnesota.   This agreement does not bind any other United States Attorney's Office or any other federal or state agency.

1.    **Charges**.   The defendant agrees to plead guilty to Count One of the Indictment, charging him with mail fraud in violation of 18 U.S.C. § 1341, and Count Nine of the Indictment, charging him with money laundering in violation of 18 U.S.C. § 1957. If at the time of sentencing the defendant has complied with this agreement, the remaining counts will be dismissed.

2.    **Factual Basis**.   The Defendant states the following factual basis for the plea:

Beginning no later than in or about 2010 and continuing at least until in or about February 2015, the defendant—operating through companies such as RSI



SCANNED
MAY 2 6 2016
U.S. DISTRICT COURT MPLS

Associates, Inc., Restoration Specialists, Inc., Road Spec Corporation, Omni Construction Services, Inc., Omni Construction Company, Omni-Midwest, Inc., and Olympic Construction Services, Inc.—fraudulently obtained construction contracts from public and private entities through the submission of false construction bonds asserting that the projects were insured if the defendant (or his company) could not complete the project or failed to pay subcontractors. In fact, the defendant had no such insurance and was therefore ineligible to bid on the construction projects.

### 2010-2012
### Omni Construction Services

From 2010 until about October 2012, defendant controlled and operated a business, primarily using the name Omni Construction Services, through which he provided construction services to clients. Certain of the defendant's potential clients—in particular public or quasi-governmental entities, but also certain private entities—solicited bids from multiple contractors for construction projects and required all bidders to obtain and provide evidence of surety bonds insuring the contractor's performance of certain aspects of the project.

The defendant—because he had previously been convicted of felony criminal offenses and had previously defaulted on certain surety bonds—believed or claimed to believe he would be unable to obtain the surety bonds necessary to bid on public projects. In order to secure construction projects commissioned by these entities, the defendant falsely claimed in bid documents that he had purchased surety bonds guaranteeing the

2

performance of his obligations under the construction project. In fact, and as defendant knew, he had not obtained any such bonds.

The defendant created phony bond documents—including bid bonds, performance bonds, and payment bonds—which were purportedly issued by a surety on behalf of the defendant and/or his company. In so doing, the defendant forged the signatures of the relevant sureties, witnesses, and public notaries.

Between 2010 and 2012, the defendant obtained, or attempted to obtain, at least five construction contracts from entities through the submission of false and fraudulent bids and bond documents, including the following:

     a. Three Rivers Park District, Off-Leash Dog Park- Fish Lake Regional Park. Purported Bond Amount $98,750.

     b. Minnesota State Colleges and Universities, Exterior Restoration, Lewis House. Purported Bond Amount $238,750.

     c. Washington County HRA, Briar Pond Roof Replacement. Purported Bond Amount $318,750.

     d. City of Minneapolis. Purported Bond Amount $78,750.

     e. Calvary Episcopal Church, Re-Roof and Asbestos Removal. Purported Bond Amount $124,513.

**Nov. 2012-Nov. 2013 – Defendant's Imprisonment**

On or about October 30, 2012, the defendant was convicted of Drug Possession in Scott County, Minnesota, and was subsequently incarcerated from about November 2012 until about November 2013.

3

**2013-2015**

From about November 2013, after getting out of prison, through about February 2015, defendant continued operating a construction business, but used different business names than before he was incarcerated, namely RSI Associates and Restoration Specialists. In order to secure construction projects commissioned by public and private entities, the defendant continued to falsely claim in bid documents that he had purchased surety bonds guaranteeing the performance of his obligations under construction contracts. In fact, and as defendant knew, he never obtained any such bonds.

The defendant also continued creating falsified bond documents—including bid bonds, performance bonds, and payment bonds—which were purportedly issued by a surety on behalf of the defendant and/or his company. In so doing, the defendant forged the signatures of the relevant sureties, witnesses, and public notaries. Between 2013 and 2015, the defendant obtained, or attempted to obtain, at least five construction contracts from public and private entities through the submission of false and fraudulent bids and bond documents, including the following:

     a.     City of Hastings, River Front Renaissance. Purported Bond amount $419,449;

     b.     Metropolitan Council, Green line OMF. Purported Bond amount $453,430;

     c.     Metropolitan Council, Heywood Office Building. Purported Bond amount $554,450;

     d.     MN Valley Transit, Burnsville Transit Station. Purported Bond amount $857,540;

e.   Independent School District 169, Eagan High School Bleachers. Purported Bond amount $103,750; and

f.   Cleary Lake Visitor Center, Scott County.   Purported Bond amount $260,757.

Through the means described above, the defendant fraudulently obtained at least approximately $3,000,000 in construction projects, obtained payments on said contracts totaling at least approximately $1,800,000, and caused losses to clients, subcontractors, and sureties totaling at least $350,000.

On or about April 8, 2014, having devised the above described scheme to defraud, the defendant caused a check in the amount of $65,111.10—representing payment on the Green Line Project—to be sent via United States Postal Service from the Metropolitan Council to RSI for the purpose of executing the scheme.

## Money Laundering

On or about December 15, 2014, the defendant knowingly engaged in a monetary transaction by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activities, that is, mail fraud in violation of 18 U.S.C. § 1341.   More specifically, on December 15, 2014, the defendant used proceeds of the mail fraud scheme from RSI's bank account to purchase a cashier's check in the amount of $25,000, which he then used to purchase two snowmobiles for his personal use.

5

3.    **Relevant Conduct**.  The government alleges that the defendant engaged in the following conduct and that it constitutes relevant conduct within the meaning of U.S.S.G. § 1B1.3.

### Concealment of Bankruptcy Assets – 2012
### (Omni Construction Services)

Beginning in or about May 2012 and continuing through in or about July 2012, the defendant knowingly and fraudulently transferred and concealed property belonging to Omni Construction Services, Inc., namely proceeds of construction contracts totaling at least approximately $323,549.10, while acting as an agent or officer of Omni Construction Services, in contemplation of a bankruptcy case under Title 11 by or against Omni Construction Services with intent to defeat the provisions of Title 11.

More specifically, between June 2011 and July 2012, the defendant withdrew at least approximately $400,000 from Omni Construction Services' bank accounts and used that money in part for his own purposes rather than to pay Omni Construction Services' creditors and/or liabilities.  Beginning in or about 2012, the defendant opened new business bank accounts in the names of Omni Construction Company, Omni-Midwest, and Olympic Roofing & Construction, and deposited at least approximately $300,000 in receivables belonging to Omni Construction Services into those bank accounts.  The defendant proceeded to use a portion of these funds for his own purposes (including to, among other things, make his house payments and transfer money to his personal bank

6

account and other business bank accounts) instead of using the money to pay Omni Construction Services' creditors and/or liabilities.

On or about July 13, 2012, the defendant caused Omni Construction Services to file a petition for bankruptcy under Chapter 7 of the Bankruptcy Code, thereby attempting to avoid paying approximately $600,000 of Omni Construction Services' creditors and/or liabilities.

### Concealment of Bankruptcy Assets – 2015
### (RSI Associates, Inc.)

Beginning in or about January 2015 and continuing through in or about March 2015, the defendant knowingly and fraudulently transferred and concealed property belonging to RSI Associates, Inc., namely proceeds of construction contracts totaling at least approximately $100,000, while acting as an agent or officer of RSI Associates, in contemplation of a bankruptcy case under Title 11 by or against RSI Associates with intent to defeat the provisions of Title 11.

More specifically, between January 2014 and February 2015, the defendant used at least approximately $400,000 from RSI's bank accounts for his own purposes (to purchase jet skis, snowmobiles, gold coins, automobiles such as a Chevrolet Corvette and Jaguar, as well as to make sizeable cash withdrawals and house payments) rather than to pay RSI's creditors and/or liabilities.  On or about January 23, 2015, the defendant opened a bank account in the name of Road Spec Corporation, and six days later, on January 29, 2015, the defendant transferred at least approximately $100,000 from RSI's bank account into

7

RSC's bank account.   The defendant used those funds for his own purposes rather than to pay RSI's creditors and/or liabilities.

On or about February 19, 2015, the defendant caused RSI Associates, Inc., to file a petition for bankruptcy under Chapter 11 of the Bankruptcy Code, thereby attempting to avoid paying at least approximately $500,000 of RSI's creditors and/or liabilities.   On or about March 10, 2015, the bankruptcy petition was dismissed without prejudice.

4.    **Statutory Penalties**. The defendant understands that the maximum statutory penalty for violation of 18 U.S.C. § 1341 is as follows:

    a.    a term of imprisonment of up to 20 years;

    b.    a criminal fine of up to the greater of $250,000.00 or twice the gain or loss from the offense;

    c.    a term of supervised release of up to three years;

    d.    a special assessment of $100.00, which is payable to the Clerk of Court prior to sentencing; and

    e.    the costs of prosecution (as defined in 28 U.S.C. § 1918(b) and 1920).

The defendant understands that the maximum statutory penalty for violation of 18 U.S.C. § 1957 is as follows:

    a.    a term of imprisonment of up to 10 years;

    b.    a criminal fine of up to the greater of $250,000.00 or twice the gain or loss from the offense;

c.      a term of supervised release of up to three years;

d.      a special assessment of $100.00, which is payable to the Clerk of Court prior to sentencing; and

e.      the costs of prosecution (as defined in 28 U.S.C. § 1918(b) and 1920).

5.      **Revocation of Supervised Release**.  The defendant understands that, if he were to violate any condition of supervised release, he could be sentenced to an additional term of imprisonment up to the length of the original supervised release term, subject to the statutory maximums set forth in 18 U.S.C. § 3583.

6.      **Guideline Calculations**.   The parties acknowledge that the defendant will be sentenced in accordance with 18 U.S.C. § 3551, et seq.   The parties also acknowledge that the Court will consider the United States Sentencing Guidelines to determine the appropriate sentence and stipulate to the following guideline calculations:

a.      Mail Fraud. The base offense level for mail fraud under 18 U.S.C. § 1341 is 7.  (U.S.S.G. § 2B1.1(a)(1)).

Specific Offense Characteristics.

(1)     Loss. It is the government's position that the loss resulting from the offense of conviction is at least $550,000 but does not exceed $1,500,000, and therefore the base offense level should be increased by 14 levels.   (U.S.S.G. § 2B1.1(b)(1)(H)).   It is the defendant's position that the loss resulting from the offense of conviction is at least $250,000 but does not exceed $550,000, and therefore the base offense level should be increased by 12 levels. (U.S.S.G. § 2B1.1(b)(1)(G)).

(2)     Sophisticated Means. It is the government's position that the offense involved the use of sophisticated means, and therefore the

9

offense level should be increased by 2 levels. (U.S.S.G. § 2B1.1(b)(10)(C)). The defendant reserves the right to challenge the application of this enhancement at sentencing.

b.    Money Laundering. The base offense level for money laundering under 18 U.S.C. § 1957 is 23 because the total offense level for the underlying offense from which the laundered funds were derived —mail fraud—is 23. (U.S.S.G. § 2S1.1(a)(1)).

Specific Offense Characteristics. The parties agree that defendant was convicted under 18 U.S.C. § 1957, and therefore the offense level should be increased by 1 level. (U.S.S.G. § 2S1.1(b)(2)(A)).

c.    Chapter Three Adjustments.

(1)    Acceptance of Responsibility. In exchange for the defendant's plea and provided that the defendant does not falsely deny any criminal or relevant conduct, the government agrees to recommend that the defendant receive a 3-level reduction for acceptance of responsibility and to make any appropriate motions with the Court. However, the defendant understands and agrees that this recommendation is conditioned upon the following: (i) the defendant testifies truthfully during the change of plea hearing, (ii) the defendant cooperates with the Probation Office in the pre-sentence investigation, (iii) the defendant commits no further acts inconsistent with acceptance of responsibility, and (iv) the defendant complies with this agreement, fully identifies all assets and makes good faith efforts to make restitution to his victims. (U.S.S.G. § 3E1.1).

d.    Other Enhancements/Adjustments. The parties agree that, based on the information available at this time, there are no other applicable enhancements or adjustments to the offense level. This does not constitute a stipulation, but a belief based on an assessment of the information currently known.

e.    Criminal History Category. Based on information available at this time, the parties believe that the defendant's criminal history category is VI. This does not constitute a stipulation, but a belief based on an assessment of the information currently known. Defendant's actual criminal history and related status will be determined by the Court

10

based on the information presented in the Presentence Report and by the parties at the time of sentencing.

f.    Guideline Range. As a result of the parties' disagreement regarding various sentencing factors, the anticipated offense level is between 17 and 21.

If the adjusted offense level is **21**, and the criminal history category is **VI**, the Sentencing Guidelines range is **77-96 months** imprisonment.

If the adjusted offense level is **17**, and the criminal history category is **VI**, the Sentencing Guidelines range is **51-63 months** imprisonment.

g.    Fine Range. If the adjusted offense level is 21, the fine range is $15,000 to $150,000. If the adjusted offense level is 17, the fine range is $10,000 to $95,000. (U.S.S.G. § 5E1.2(c)(3)).

h.    Supervised Release. The Sentencing Guidelines require a term of supervised release of between one and three years. (U.S.S.G. § 5D1.2).

i.    Departures and Sentencing Recommendations. The parties reserve the right to make motions for departures or variances from the applicable guideline.

7.    **Discretion of the Court**. The foregoing stipulations are binding on the parties, but do not bind the Court. The parties understand that the Sentencing Guidelines are advisory and their application is a matter that falls solely within the Court's discretion. The Court may make its own determination regarding the applicable guideline factors and the applicable criminal history category. The Court may also depart from the applicable guidelines. If the Court determines that the applicable guideline calculations or the defendant's criminal history category is different from that stated above, the parties may

11

not withdraw from this agreement, and the defendant will be sentenced pursuant to the Court's determinations.

8.   **Special Assessments**.   The Guidelines require payment of a special assessment in the amount of $100.00 for each felony count of which the defendant is convicted.   U.S.S.G. § 5E1.3.   The defendant agrees to pay the special assessment prior to sentencing.

9.   **Restitution**.   Defendant understands and agrees that the Mandatory Restitution Act, 18 U.S.C. § 3663A, applies and that the Court is required to order the defendant to pay the maximum restitution to the victims of his crimes as provided by law. The defendant understands and agrees that the Court will order him to make restitution for the entire loss caused by his fraud scheme and that the restitution order will not be limited to the counts of conviction.   The defendant further understands that the government will request that the Court require him to pay any tax liabilities arising from the conduct described above as a condition of his supervised release.

10.   **Forfeiture**. The Defendant agrees to forfeit to the United States, pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or personal, which constitutes or is derived from proceeds traceable to the violation of 18 U.S.C. § 1341.   The government reserves its right to seek the direct forfeiture of property, a money judgment forfeiture against the defendant, and the forfeiture of substitute property pursuant to 21 U.S.C. § 853(p), as incorporated by 28 U.S.C. § 2461(c).

The defendant agrees to fully disclose all assets in which he has any interest or over which he exercises control, directly or indirectly, including those held by a spouse, nominee or other third party.   The defendant further agrees as follows:

a.    The Defendant will promptly submit a completed financial statement to the U.S. Attorney's Office, in a form it provides and as it directs. The Defendant promises that his financial statement will be complete, truthful and accurate.

b.    The Defendant agrees that, at the discretion of the U.S. Attorney's Office, the Defendant will be deposed or interviewed regarding financial issues and assets prior to sentencing.

c.    The Defendant agrees to execute releases as requested by the U.S. Attorney's Office to obtain information regarding the Defendant's assets and financial accounts.

13

11.    **Complete Agreement**.    This is the entire agreement and understanding between the United States and the defendant.   There are no other agreements, promises, representations, or understandings.

Date:

ANDREW M. LUGER
United States Attorney

5/19/16

BY: _____
BENJAMIN F. LANGNER
Assistant U.S. Attorney

Date: 04/18/16

_____
GERARD LEONARD ROY
Defendant

Date: 4/18/2016

_____
MATTHEW FLING
Attorney for Defendant

14