UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 15-303 (MJD/JJK)

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | **GOVERNMENT'S POSITION** |
| | ) | **WITH RESPECT TO** |
| v. | ) | **SENTENCING** |
| | ) | |
| GERARD LEONARD ROY, | ) | |
| Defendant. | ) | |

The United States of America, by and through its attorneys, Andrew M. Luger, United States Attorney for the District of Minnesota, and Assistant United States Attorney Benjamin F. Langner, hereby submits this memorandum setting forth its position with respect to sentencing factors in this matter.

## I.     The Offense of Conviction

Beginning no later than in or about 2010 and continuing at least until in or about February 2015, the defendant—operating through companies such as RSI Associates, Inc., Restoration Specialists, Inc., Road Spec Corporation, Omni Construction Services, Inc., Omni Construction Company, Omni-Midwest, Inc., and Olympic Construction Services, Inc.—fraudulently obtained construction contracts from public and private entities through the submission of false construction bonds asserting that the projects were insured if the defendant (or his company) could not complete the project or failed to pay subcontractors. In fact, the defendant had no such insurance and was therefore ineligible to bid on the construction projects.

**2010-2012**
**Omni Construction Services**

From 2010 until about October 2012, defendant controlled and operated a business, primarily using the name Omni Construction Services, through which he provided construction services to clients. Certain of the defendant's potential clients—in particular public or quasi-governmental entities, but also certain private entities—solicited bids from multiple contractors for construction projects and required all bidders to obtain and provide evidence of surety bonds insuring the contractor's performance of certain aspects of the project.

The defendant—because he had previously been convicted of felony criminal offenses and had previously defaulted on certain surety bonds—believed or claimed to believe he would be unable to obtain the surety bonds necessary to bid on public projects. In order to secure construction projects commissioned by these entities, the defendant falsely claimed in bid documents that he had purchased surety bonds guaranteeing the performance of his obligations under the construction project. In fact, and as defendant knew, he had not obtained any such bonds.

The defendant created phony bond documents—including bid bonds, performance bonds, and payment bonds—which were purportedly issued by a surety on behalf of the defendant and/or his company. In so doing, the defendant forged the signatures of the relevant sureties, witnesses, and public notaries.

Between 2010 and 2012, the defendant obtained, or attempted to obtain, at least five construction contracts from entities through the submission of false and fraudulent bids and bond documents, including the following:

a.  Three Rivers Park District, Off-Leash Dog Park- Fish Lake Regional Park. Purported Bond Amount $98,750.

b.  Minnesota State Colleges and Universities, Exterior Restoration, Lewis House. Purported Bond Amount $238,750.

c.  Washington County HRA, Briar Pond Roof Replacement. Purported Bond Amount $318,750.

d.  City of Minneapolis. Purported Bond Amount $78,750.

e.  Calvary Episcopal Church, Re-Roof and Asbestos Removal. Purported Bond Amount $124,513.

### Nov. 2012-Nov. 2013 – Defendant's Imprisonment

On or about October 30, 2012, the defendant was convicted of Drug Possession in Scott County, Minnesota, and was subsequently incarcerated from about November 2012 until about November 2013.

### 2013-2015

From about November 2013, after getting out of prison, through about February 2015, defendant continued operating a construction business, but used different business names than before he was incarcerated, namely RSI Associates and Restoration Specialists. In order to secure construction projects commissioned by public and private entities, the defendant continued to falsely claim in bid documents that he had purchased surety bonds

guaranteeing the performance of his obligations under construction contracts. In fact, and as defendant knew, he never obtained any such bonds.

The defendant also continued creating falsified bond documents—including bid bonds, performance bonds, and payment bonds—which were purportedly issued by a surety on behalf of the defendant and/or his company. In so doing, the defendant forged the signatures of the relevant sureties, witnesses, and public notaries.

Between 2013 and 2015, the defendant obtained, or attempted to obtain, at least five construction contracts from public and private entities through the submission of false and fraudulent bids and bond documents, including the following:

    a.    City of Hastings, River Front Renaissance. Purported Bond amount $419,449;

    b.    Metropolitan Council, Green line OMF. Purported Bond amount $453,430;

    c.    Metropolitan Council, Heywood Office Building. Purported Bond amount $554,450;

    d.    MN Valley Transit, Burnsville Transit Station. Purported Bond amount $857,540;

    e.    Independent School District 169, Eagan High School Bleachers. Purported Bond amount $103,750; and

    f.    Cleary Lake Visitor Center, Scott County. Purported Bond amount $260,757.

Through the means described above, the defendant fraudulently obtained at least approximately $3,000,000 in construction projects, obtained payments on said contracts totaling at least approximately $1,800,000, and caused losses to clients, subcontractors, and sureties totaling approximately $820,960.55.

On or about April 8, 2014, having devised the above described scheme to defraud, the defendant caused a check in the amount of $65,111.10—representing payment on the Green Line Project—to be sent via United States Postal Service from the Metropolitan Council to RSI for the purpose of executing the scheme.

### Money Laundering

On or about December 15, 2014, the defendant knowingly engaged in a monetary transaction by, through, or to a financial institution, affecting interstate commerce, in criminally derived property of a value greater than $10,000, such property having been derived from specified unlawful activities, that is, mail fraud in violation of 18 U.S.C. § 1341. More specifically, on December 15, 2014, the defendant used proceeds of the mail fraud scheme from RSI's bank account to purchase a cashier's check in the amount of $25,000, which he then used to purchase two snowmobiles for his personal use.

## II.    Relevant Conduct

### Concealment of Bankruptcy Assets – 2012
### (Omni Construction Services)

Beginning in or about May 2012 and continuing through in or about July 2012, the defendant knowingly and fraudulently transferred and concealed property belonging to Omni Construction Services, Inc., namely proceeds of construction contracts totaling at least approximately $323,549.10, while acting as an agent or officer of Omni Construction Services, in contemplation of a bankruptcy case under Title 11 by or against Omni Construction Services with intent to defeat the provisions of Title 11.

More specifically, between June 2011 and July 2012, the defendant withdrew at least approximately $400,000 from Omni Construction Services' bank accounts and used that money in part for his own purposes rather than to pay Omni Construction Services' creditors and/or liabilities. Beginning in or about 2012, the defendant opened new business bank accounts in the names of Omni Construction Company, Omni-Midwest, and Olympic Roofing & Construction, and deposited at least approximately $300,000 in receivables belonging to Omni Construction Services into those bank accounts. The defendant proceeded to use a portion of these funds for his own purposes (including to, among other things, make his house payments and transfer money to his personal bank account and other business bank accounts) instead of using the money to pay Omni Construction Services' creditors and/or liabilities.

On or about July 13, 2012, the defendant caused Omni Construction Services to file a petition for bankruptcy under Chapter 7 of the Bankruptcy Code, thereby attempting to avoid paying approximately $600,000 of Omni Construction Services' creditors and/or liabilities.

### Concealment of Bankruptcy Assets – 2015
### (RSI Associates, Inc.)

Beginning in or about January 2015 and continuing through in or about March 2015, the defendant knowingly and fraudulently transferred and concealed property belonging to RSI Associates, Inc., namely proceeds of construction contracts totaling at least approximately $100,000, while acting as an agent or officer of RSI Associates, in

6

contemplation of a bankruptcy case under Title 11 by or against RSI Associates with intent to defeat the provisions of Title 11.

More specifically, between January 2014 and February 2015, the defendant used at least approximately $400,000 from RSI's bank accounts for his own purposes (to purchase jet skis, snowmobiles, gold coins, automobiles such as a Chevrolet Corvette and Jaguar, as well as to make sizeable cash withdrawals and house payments) rather than to pay RSI's creditors and/or liabilities. On or about January 23, 2015, the defendant opened a bank account in the name of Road Spec Corporation, and six days later, on January 29, 2015, the defendant transferred at least approximately $100,000 from RSI's bank account into RSC's bank account. The defendant used those funds for his own purposes rather than to pay RSI's creditors and/or liabilities.

On or about February 19, 2015, the defendant caused RSI Associates, Inc., to file a petition for bankruptcy under Chapter 11 of the Bankruptcy Code, thereby attempting to avoid paying at least approximately $500,000 of RSI's creditors and/or liabilities. On or about March 10, 2015, the bankruptcy petition was dismissed without prejudice.

## III.   The PSR

As set forth in the PSR, the applicable Guidelines sections are § 2B1.1 and 2S1.1. The base offense level is 7, and the offense level is increased by 14 levels because the total loss was more than $550,000 but less than $1,500,000. *See* U.S.S.G. § 2B1.1(b)(1)(H).

The offense level is increased by an additional 2 levels pursuant to U.S.S.G. § 2B1.1(b)(10)(C) because the offense involved the use of sophisticated means.

The offense level is increased by an additional 1 level pursuant to U.S.S.G. § 2S1.1(a) because the defendant was convicted under 18 U.S.C. § 1957.

The PSR reflects a 3-level reduction for acceptance of responsibility (U.S.S.G. §3E1.1). Thus, the defendant's total offense level should be 21.

To the government's knowledge, the PSR correctly reflects the defendant's criminal history score. The defendant's extensive criminal history totals 55 criminal history points, putting the defendant in Criminal History Category VI.

## IV.    The Appropriate Sentence in Light of 18 U.S.C. § 3553(a)

Assuming the application of the Sentencing Guidelines as set forth above, the sentencing guidelines range would be 77 to 96 months. The government believes that a sentence at the high end of the applicable Guidelines range—96 months—is an appropriate sentence in this case.

The defendant's criminal history is astounding. He has spent his entire adult life, nearly 30 years, in and out of the criminal justice system. The defendant has been convicted nearly fifty times for offenses involving deceit, theft, drugs, and violence. The defendant is a substantial danger to society, and only a significant sentence of imprisonment can adequately protect the public from the defendant's lifelong disregard for the law.

The defendant received 55 criminal history points. Only 13 points are required to place him in Category VI, the highest possible category in the United States Sentencing Guidelines. The defendant's life of crime separates him from other similarly-situated

defendants, and provides a substantial basis for the court to impose a sentence at the high end, or above, the advisory Guidelines Range. *See* U.S.S.G. § 4A1.3.

To the extent the Court takes into consideration the sentence served by the defendant in the Minnesota Department of Corrections stemming from State criminal cases associated with his conduct in this matter, the Court should begin—or even arrive—at 96 months when deciding what sentence to impose.

Given the scheme perpetrated by the defendant, as well as his extensive list of prior fraudulent behavior, the defendant should receive a sentence at the high end of the advisory Sentencing Guidelines range in this case.

Dated: September 27, 2016

Respectfully submitted,

ANDREW M. LUGER
United States Attorney

*s/Benjamin F. Langner*

BY: BENJAMIN F. LANGNER
Assistant U.S. Attorney

9