UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Criminal No. 15-303 (MJD/SER)

UNITED STATES OF AMERICA,

      Plaintiff,

v.

GERARD LEONARD ROY,

      Defendant.

**MOTION FOR AN ORDER
OF FORFEITURE**

The United States of America, by and through Andrew M. Luger, United States Attorney for the District of Minnesota, and James S. Alexander, Assistant United States Attorney, respectfully moves this Court, pursuant to 18 U.S.C. § 981(a)(1)(C) in conjunction with 28 U.S.C. § 2461(c), 18 U.S.C. § 982(a)(1) and Fed. R. Crim. P. 32.2, for an Order of Forfeiture entering a general order of forfeiture ordering the defendant to forfeit all proceeds of his fraud, and ordering the defendant to pay a forfeiture money judgment in the amount of $25,000.00, and in support thereof represents to the Court the following:

1.     On November 9, 2015, an Indictment was returned in the District of Minnesota against defendant Gerard Leonard Roy. *See* Docket No. 1. The Indictment charged the defendant with two counts of mail fraud in violation of 18 U.S.C. § 1341, five counts of wire fraud in violation of 18 U.S.C. § 1343, four counts of transactions involving fraud proceeds (money laundering) in violation of 18 U.S.C. § 1957, and two counts of concealment of bankruptcy assets in violation of 18 U.S.C. § 152(7).

2.      The Forfeiture Allegations of the Indictment sought the forfeiture of property pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), including the forfeiture of any property, real or personal, that constitutes or is derived from proceeds traceable to the commission of the offenses charged in Counts 1-7, 12 and 13 of the Indictment.  With respect to Counts 8-11, the government sought the forfeiture pursuant to 18 U.S.C. § 982(a)(1) of all property, real or personal, involved in the offenses or any property traceable to such property.

3.      On May 25, 2016, the United States and defendant Gerard Leonard Roy entered into a Plea Agreement, whereby the defendant pled guilty to Counts 1 and 9 of the Indictment.  *See* Plea Agreement and Sentencing Stipulations (Docket No. 30) ¶ 1. Count 1 of the Indictment charged the defendant with mail fraud in violation of 18 U.S.C. § 1341, and Count 9 of the Indictment charged the defendant with money laundering in violation of 18 U.S.C. § 1957.  *Id.*

4.      Beginning in or about 2010 and continuing until at least in or about February 2015, the defendant operated companies such as RSI Associates, Inc., Restoration Specialists, Inc., Road Spec Corporation, Omni Construction Services, Inc., Omni Construction Company, Omni-Midwest, Inc. and Olympic Construction Services, Inc.  *Id.* ¶ 2 (Factual Basis).  The defendant used the companies to fraudulently obtain construction contracts from public and private entities through the submission of false construction bonds asserting that the projects were insured if the defendant (or his company) could not complete the project or failed to pay subcontractors.  *Id.*  The

2

defendant had no such insurance and was therefore ineligible to bid on the construction projects. *Id*.

5.     The defendant admitted that during the course of the mail fraud scheme, he fraudulently obtained at least approximately $3,000,000 in construction projects and obtained payments exceeding $1,800,000 on said contracts.   Plea Agreement and Sentencing Stipulations ¶ 2.   The defendant's scheme caused losses to clients, subcontractors and sureties totaling at least $350,000. *Id*.

**2010-2012 Omni Construction Services**

6.     From 2010 until about October 2012, the defendant controlled and operated a business, primarily using the name Olympic Construction Services, through which he provided construction services to clients. *Id*. Certain potential clients, both public or quasi-governmental and private entities, solicited bids from multiple contractors for construction projects and required all bidders to obtain and provide evidence of surety bonds insuring the contractor's performance. *Id*.

7.     The defendant – because he had previously been convicted of felony criminal offenses and had previously default on certain surety bonds – believed or claimed to believe that he would be unable to obtain the surety bonds necessary to bid on public projects. *Id*.

8.     In order to secure construction projects, the defendant falsely claimed in bid documents that he had purchased surety bonds guaranteeing the performance of his obligations under the construction project.  In fact, and as the defendant knew, he had not obtained any such bonds. *Id*.

9. The defendant created phony bond documents that were purportedly issued by a surety on behalf of the defendant and/or his company. *Id.* In so doing, the defendant forged the signatures of relevant sureties, witnesses and public notaries. *Id.*

10. Between 2010 and 2012, the defendant obtained, or attempted to obtain, at least five construction contracts, using false and fraudulent bids and bond documents, from entities including: Three Rivers Park District, Minnesota State Colleges and Universities, Washington County HRA, City of Minneapolis, and Calvary Episcopal Church. *Id.*

11. The defendant was awarded contracts with all the entities described above with the exception of the City of Minneapolis. Under these contracts, Roy received, through his companies, payments totaling at least $757,403.52. *See* Declaration of Ephraim Holmgren ¶¶ 6-23 ("Holmgren Decl."). These payments included the following:

    a. Between February 2011 and June 2011 Three Rivers Park District paid $48,326.69 to Olympic Construction Services. Holmgren Decl. ¶¶ 7-10.

    b. Between June 2012 and September 2012, Minnesota State Colleges and Universities paid $227,650.00 to Omni Midwest, Inc. *Id.* at ¶¶ 11-14.

    c. Between May 2012 and June 2012, Washington County HRA paid $323,550.00 to Omni Construction Services, Inc. *Id.* at ¶¶ 15-18.

    d. Between May 2011 and August 2011, Calvary Episcopal Church paid $157,876.83 to Omni Construction Services, Inc. *Id*. at ¶¶ 19-23.

**2013 – 2015**

12. Following a period of incarceration on an unrelated criminal charge, the defendant continued operating a construction business using different names, namely RSI Associates ("RSI") and Restoration Specialists, between on or about November 2013 and on or about February 2015. Plea Agreement and Sentencing Stipulations (Docket No. 30) ¶ 2. The defendant continued to falsely claim in bid documents that he purchased surety bonds guaranteeing his performance on construction contracts. *Id*. The defendant knew that he never obtained any such surety bonds. *Id*.

13. The defendant also continued to create falsified bond documents that were purportedly issued by a surety on behalf of the defendant and/or his company. *Id*. In so doing, the defendant forged the signatures of relevant sureties, witnesses and public notaries. *Id*.

14. Between 2013 and 2015, the defendant obtained, or attempted to obtain, at least five construction contracts, using false and fraudulent bids and bond documents, from entities including: City of Hastings, Metropolitan Council – Green line OMF, Metropolitan Council – Heywood Office Building, MN Valley Transit, Independent School District 169 and Clearly Lake Visitor Center, Scott County. *Id*.

15. The defendant was awarded contracts with all entities described above and received payments from all with the exception of MN Valley Transit. Under these

contracts, Roy received, through his company RSI, payments totaling at least $1,504,562.07. *See* Holmgren Decl. ¶¶ 24-58. These payments included the following:

> a. Between November 2014 and January 2015, the City of Hastings paid $95,572.00 to RSI. Holmgren Decl. ¶¶ 25-29.
>
> b. Between March 2014 and February 2015, Metropolitan Council paid $473,130.95 to RSI for the Green Line project. Holmgren Decl. ¶¶ 30-38.
>
> c. Between October 2014 and December 2014, Metropolitan Council paid $517,094.02 to RSI for the Heywood Office Building project. Holmgren Decl. ¶¶ 39-45.
>
> d. Between July 2014 and January 2015, Independent School District 169 paid $167,750.00 to RSI. Holmgren Decl. ¶¶ 46-52.
>
> e. Between August 2014 and December 2014, Scott County paid $251,015.10 to RSI. Holmgren Decl. ¶¶ 53-58.

16.    With respect to money laundering, the defendant admitted that on December 15, 2014, he knowingly engaged in a monetary transaction in criminally derived property of a value greater than $10,000. *Id.* More specifically, the defendant used proceeds of the mail fraud to purchase a cashier's check in the amount of $25,000 from RSI's bank account, which he then used to purchase two snowmobiles for his personal use. *Id.*; Indictment Count 9.

17.    In his Plea Agreement, the defendant agreed to forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c), any property, real or

personal, which constitutes or is derived from proceeds traceable to the violation of 18 U.S.C. § 1341. Plea Agreement and Sentencing Stipulations ¶ 10. The United States reserved the right to seek a forfeiture money judgment against the defendant and to proceed against directly forfeitable or substitute property. *Id.*

18.    Rule 32.2(b) of the Federal Rules of Criminal Procedure provides that:

(b)    Entering a Preliminary Order of Forfeiture.

(1)    Forfeiture Phase of the Trial.

(A)    Forfeiture Determinations. As soon as practical . . . after a plea of guilty or nolo contendere is accepted, on any count in an indictment or information regarding which criminal forfeiture is sought, the court must determine what property is subject to forfeiture under the applicable statute. . . .If the government seeks a personal money judgment, the court must determine the amount of money that the defendant will be ordered to pay.

. . . .

(B)    Evidence and Hearing. The court's determination may be based on evidence already in the record, including any written plea agreement, and on any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable. If the forfeiture is contested, on either party's request the court must conduct a hearing after the verdict or finding of guilty.

(2)    Preliminary Order.

(A)    Contents of a Specific Order. If the court finds that property is subject to forfeiture, it must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria. The court must enter the

7

order without regard to any third party's interest in the property.  Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c).

19.    Based upon the defendant's guilty plea to Counts 1 and 9 of the Indictment, the government requests a general order of forfeiture pursuant to Fed. R. Crim. P. 32.2(b)(3) ordering the defendant to forfeit all proceeds of his fraud, and ordering the defendant to pay a money judgment forfeiture in the amount of $25,000.00.

## ARGUMENT

**I.    A General Order of Forfeiture Should Be Entered Against The Defendant.**

The defendant pled guilty to mail fraud in violation of 18 U.S.C. § 1341.  Federal law authorizes forfeiture in connection with violations of 18 U.S.C. § 1341, including the forfeiture of "any property, real or personal, which constitutes or is derived from proceeds traceable" to the mail fraud.  *See* 18 U.S.C. § 981(a)(1)(C) as incorporated by 28 U.S.C. § 2461(c).[1]

Criminal forfeiture is a part of sentencing, it is not a substantive element of the offense.  *Libretti v. United States*, 516 U.S. 29, 38-39 (1995).  The U.S. Supreme Court recently affirmed the important role played by criminal forfeiture:

Forfeitures help to ensure that crime does not pay: They at once punish wrongdoing, deter future illegality, and 'lessen the economic power' of criminal enterprises. . . .The Government also uses forfeited property to

---

[1] 18 U.S.C. § 981(a)(1)(C) authorizes the forfeiture of the proceeds of any property which constitutes or is derived from proceeds traceable to various offenses, including any offense constituting "specified unlawful activity" as defined by 18 U.S.C. § 1956(c)(7). Violations of 18 U.S.C. § 1341 are included within the definition of "specified unlawful activity." *See* 18 U.S.C. §§ 1956(c)(7)(A) and 1961(1).

recompense victims of crime, improve conditions in crime-damaged communities, and support law enforcement activities like police training.

*Kaley v. United States*, 134 S.Ct. 1090, 1094 (2014).   Since criminal forfeiture is an aspect of sentencing, the preponderance of the evidence standard of proof applies. *United States v. Phie Van Nguyen*, 602 F.3d 886, 903 (8th Cir. 2010); *United States v. Huber*, 462 F.3d 945, 949 (8th Cir. 2006) (rejecting argument that defendant was entitled to have the jury decide forfeiture beyond a reasonable doubt); *United States v. Bieri*, 21 F.3d 819, 822 (8th Cir. 1994) (preponderance of the evidence standard applies to criminal forfeiture).

The United States requests that a general order of forfeiture be entered against the defendant pursuant to Fed. R. Crim. P. 32.2(b)(2)(C).   A general order of forfeiture, which is expressly authorized by the Federal Rules of Criminal Procedure, allows the government to seek the forfeiture of directly forfeitable property identified after the date of sentencing:

> **(C)  General Order.**  If, before sentencing, the court cannot identify all the specific property subject to forfeiture or calculate the amount of the money judgment, the court may enter a forfeiture order that:
>
> (i)     lists any identified property;
>
> (ii)    describes other property in general terms;
>
> (iii)   states that the order will be amended under Rule 32.2(e)(1) when additional specific property is identified or the amount of the money judgment has been calculated.

Fed. R. Crim. P. 32.2(b)(2)(C).

The government is requesting that an order of forfeiture be entered against defendant Gerard Roy in general terms as provided for in Fed. R. Crim. P. 32.2(b)(2)(C). The defendant agreed to the entry of a general order of forfeiture in his Plea Agreement, wherein he agreed to forfeit to the United States pursuant to 18 U.S.C. § 981(a)(1)(C) and 28 U.S.C. § 2461(c) any property, real or personal, which constitutes or is derived from proceeds traceable to the violation of 18 U.S.C. § 1341.  Plea Agreement and Sentencing Stipulations ¶ 10.    The defendant obtained payments totaling approximately $2,261,965.59 from nine separate entities on the fraudulently obtained construction projects.   *See* Declaration of Ephraim Holmgren.    The defendant's Presentence Investigation indicates that the defendant currently owns very minimal assets, and the government is not presently aware of assets traceable to the defendant's fraud that are available for forfeiture.  The government therefore requests that an order of forfeiture be entered against the defendant in general terms, wherein the defendant is ordered to forfeit all proceeds of the mail fraud offense.  The government further requests that this Court retain jurisdiction over this action pursuant to Fed. R. Crim. P. 32.2(e) so that the United States may seek the forfeiture of assets if and when such assets are discovered.

**II.    A Money Judgment Forfeiture In The Amount of $25,000.00 Should Be Entered Against Defendant Gerard Roy.**

The United States requests the entry of a forfeiture judgment against the defendant in the amount of $25,000.00 based on his guilty plea to Count 9 of the Indictment.  Title 18, United State Code, Section 982(a)(1) authorizes forfeiture in connection with a

violation of 18 U.S.C. § 1957 of "[a]ny property, real or personal, involved in such offense, or any property traceable to such property."

Criminal forfeiture may involve the forfeiture of specific property, and may also include a money judgment. *See, e.g., United States v. Huber*, 404 F.3d 1047, 1056 (8th Cir. 2005) ("Forfeiture under section 982(a)(1) in a money-laundering case allows the government to obtain a money judgment representing the value of all property 'involved in' the offense, including 'the money or other property being laundered.'"); *United States v. Loren Jennings*, 487 F.3d 564, 586 (8th Cir. 2007) (affirming money judgment for amount of proceeds defendant derived from "honest services" mail fraud scheme); *United States v. Moyer*, 313 F.3d 1082, 1083 (8th Cir. 2002) (upholding money laundering forfeiture of amount equal to the amount defendant embezzled from pension plan and then used to pay personal creditors in violation of section 1957); *United States v. Vampire Nation*, 451 F.3d 189, 202 (3rd Cir. 2006) (as an *in personam* order, a forfeiture order may take the form of a judgment for a sum of money equal to the proceeds the defendant obtained from the offense, even if he no longer has those proceeds, or any other assets, at the time he is sentenced).

Forfeiture and restitution are separate and independent aspects of a federal criminal sentence.

> Forfeiture is mandatory even when restitution is also imposed. These two aspects of a defendant's sentence serve distinct purposes: restitution functions to compensate the victim, whereas forfeiture acts to punish the wrongdoer.

11

*United States v. Blackman*, 746 F.3d 137, 143 (4th Cir. 2014). Moreover, forfeited assets are frequently used to compensate criminal victims through the remission process authorized by 28 C.F.R. Part 9.

As noted above, the defendant pleaded guilty to Count 9 of the Indictment, charging him with money laundering in violation 18 U.S.C. § 1957. Specifically, on December 15, 2014, the defendant purchased a cashier's check in the amount of $25,000 with funds from RSI's bank account to purchase snowmobiles. *See* Indictment Count 9. The snowmobiles were involved in a fire, and are not available for forfeiture. The sum of $25,000.00 was "involved in" the money laundering offense to which the defendant pleaded guilty, and the government therefore requests a money judgment forfeiture in the amount of $25,000.00 based on the defendant's conviction on Count 9 of the Indictment.

### III.    Motion For An Order Allowing Discovery To Identify Assets Subject To Forfeiture.

The United States also seeks the entry of an order pursuant to Fed. R. 32.2(b)(3) and 28 U.S.C. § 3015, authorizing the government to conduct discovery for the purpose of identifying and locating assets subject to forfeiture to the United States, property traceable to such assets, or assets of the defendant that may be substituted up to the value of the forfeited assets. Rule 32.2(b)(3) authorizes the government, upon the entry of a preliminary order of forfeiture, to "conduct any discovery the court considers proper in identifying, locating, or disposing of the property" that has been forfeited to the United States. Such discovery may include the taking of depositions of witnesses. *See also* 21 U.S.C. § 853(m); *United States v. Saccoccia*, 898 F. Supp. 53 (D.R.I. 1995) (holding that

12

the government can take depositions for the purpose of locating assets controlled by the defendant that are subject to forfeiture). In addition, 28 U.S.C. § 3015 authorizes the United States to conduct discovery regarding the financial condition of the debtor "in the manner in which discovery is authorized by the Federal Rules of Civil Procedure in an action on a claim for a debt."

The government seeks an order authorizing discovery to locate assets subject to forfeiture. The court is also requested to retain jurisdiction over this action pursuant to Rule 32.2(e) to forfeit any subsequently discovered substitute property, and to dispose of any third-party claims to such assets.

WHEREFORE, the United States moves this Court for the entry of an order of forfeiture as set forth above.

Dated: January 18, 2017

Respectfully submitted,

ANDREW M. LUGER
United States Attorney

s/ James S. Alexander

BY: JAMES S. ALEXANDER
Assistant United States Attorney
Attorney No. 166145
600 United States Courthouse
300 South Fourth Street
Minneapolis, MN 55415
612-664-5600
Email: jim.alexander@usdoj.gov

13